[Cite as *State v. Szafranski*, 2019-Ohio-4349.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 107905 |
| JOSHUA SZAFRANSKI, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART;
REMANDED FOR RESENTENCING
**RELEASED AND JOURNALIZED:** October 24, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-623028-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Nathaniel Tosi and Jennifer Meyer, Assistant Prosecuting Attorneys, *for appellee.*

Law Office of Gregory S. Robey, and Gregory Scott Robey, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1}  Defendant-appellant, Joshua Szafranski, appeals his convictions and sentence.  He claims the following errors:

1. The trial court erred when it refused to allow defense counsel to conduct an effective voir dire, thereby denying appellant the guarantee of an impartial jury and equal protection of laws, in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

2. The state failed to present sufficient evidence to sustain convictions against appellant on the aggravated menacing count and the criminal damaging counts.

3. Appellant's convictions on the aggravated menacing count and the criminal damaging counts are against the manifest weight of the evidence presented and must be reversed.

4. Appellant was denied due process of law and a fair trial by the cumulative errors committed by the trial court.

5. Appellant was denied due process of law and a fair trial due to prosecutorial misconduct in breaching the pretrial agreement on the motions in limine.

6. The trial court erred when it refused to grant appellant's requested jury and limiting instructions.

7. The trial court erred when it denied appellant's motion for judgment of acquittal after verdict and/or for a new trial.

8. The trial court abused its discretion in imposing an indefinite period of electronic home detention/GPS monitoring that places an unfair burden on appellant's liberty and bears only a remote relationship to the offenses; and by failing to state the length of the community control period on the record; and by failing to properly consider sentencing criteria in issuing an unreasonable sentence.

{¶ 2} We find some merit to the appeal, affirm Szafranski's convictions, but vacate his sentence and remand the case to the trial court for resentencing.

## I. Facts and Procedural History

{¶ 3} Szafranski was charged with three counts of felonious assault in violation of R.C. 2903.11, one count of aggravated menacing in violation of R.C. 2903.21, and two counts of criminal damaging in violation of R.C. 2909.06.

Szafranski filed two motions in limine prior to trial to exclude, among other things (1) statements of an unidentified 911 caller and an unidentified eyewitness at the crime scene, (2) Szafranski's participation in a diversion program from a prior case, and (3) racial slurs Szafranski allegedly made to police at the time of his arrest. Szafranski and the state tentatively agreed that these items would be excluded, but their agreement was subject to change depending on the evidence adduced at trial.

{¶ 4} The victim, Macey Williams ("Williams"), testified that on November 3, 2017, at approximately 5:00 p.m., she was driving south on Alger Road in Lakewood, Ohio. Her two-year old daughter and her two-year old niece were strapped in car seats in the back seat. Williams was on her way to pick up an older child from daycare when she stopped at a four-way stop behind a red Camry.

{¶ 5} While waiting at the stop, two cars pulled behind Williams. After a few seconds, the red Camry did not move even though three cars had already proceeded through the four-way stop from the other direction. The driver of one of the cars behind Williams honked the horn, and Williams also honked her horn. (Tr. 298, 322.) Williams testified that the driver of the red Camry, later identified as Szafranski, exited his car, approached Williams's car, and asked: "What do you want, you fucking bitch?" (Tr. 298.) According to Williams, Szafranski stood one step away from her door and said: "Square up. Get out the car, you fucking bitch. Do you want to square up?" (Tr. 298, 301.) Szafranski saw the two children in the backseat and told Williams, "You're lucky you got kids in the car so I'm going to give your ass a pass." (Tr. 302.)

{¶ 6} Thereafter, Szafranski got back in his car and reversed it toward Williams's car. (Tr. 303.) Williams took a picture of Szafranski's car. (Tr. 303.) The picture, which shows the reverse lights illuminated, was admitted into evidence. Williams testified that she swerved around Szafranski's car because she "imagined he was going to * * * try and back into me." (Tr. 304.) Shortly thereafter, Williams called 911. (Tr. 304.)

{¶ 7} Williams turned onto Warren Road in Lakewood and was talking to the 911 dispatcher when Williams observed Szafranski in her rear-view mirror. (Tr. 305.) Szafranski told Williams to open her window and again asked: "Do you want to square up?" (Tr. 308.) Williams testified that Szafranski began "brake-checking" her, meaning he would "speed up behind her and brake real fast." (Tr. 305.) She explained:

> He was acting like he was going to hit me. He would speed up and he would brake-check really fast. Speed up, brake-check really fast. At this point, I'm telling the dispatcher everything that he's doing.

(Tr. 306.) The dispatcher told Williams to turn off the road, but Szafranski was blocking her. (Tr. 306, 308.) Meanwhile, Szafranski continued to yell obscenities at Williams. The dispatcher told Williams she could hear Szafranski yelling at her. (Tr. 308-309; 911 call admitted into evidence as exhibit No. 5.) The dispatcher advised Williams not to respond to Szafranski and to proceed to the First District Cleveland Police station on West 130th Street. Williams told the dispatcher: "He's crazy, he's cutting me off," "he's all over the street," and "he's going to kill me."

Moments later, Williams's car was struck by two cars at the intersection of Lorain Road and West 140th Street in Cleveland.

{¶ 8} Officer William J. Haburjak ("Haburjak"), of the Cleveland Police Department, testified that he received a call for a road-rage incident in which one car was chasing another. (Tr. 355.) He subsequently learned that one of the cars was involved in a crash.

{¶ 9} Haburjak spoke with Williams at the scene. He described her as "crying," and "very upset." He explained: "She kept looking around, saying 'Is that him?' 'Is that him?' to the cars driving by." (Tr. 356.) Officer Haburjak ran Szafranski's license plate number and found his address in Vermilion, Ohio. Thereafter, Haburjak received permission from his supervisor to arrest Szafranski in Vermilion. Haburjak testified that as he was placing Szafranski in the back of the police car, he yelled to his father: "I can't believe I'm getting a felony because of that n----r bitch." (Tr. 362, 430, 449.)

{¶ 10} Detective David Pochatek, of the Cleveland Police Department, conducted a follow-up investigation of the accident that occurred on November 3, 2017. He testified that Williams's car was struck by one car driven by Laura Adamczyk and another car driven by Irene Clement and that all three vehicles were damaged. Both Williams and Clement testified that their cars were "totaled," i.e., declared a total loss. (Tr. 345, 473.)

{¶ 11} The defense called three witnesses (1) Irene Clement, (2) Henry Lipian, an accident reconstructionist, and (3) Szafranski, who testified on his own

behalf. Clement testified that she had the green light when she was struck by Williams's car. (Tr. 468.) She went, by EMS, to Fairview Hospital for treatment after the accident.

{¶ 12} Lipian testified that he reviewed the police report, the police-dash-cam video of the crash scene, and examined and measured the cars involved in the accident, including the data stored on the airbag control module in Williams's car. (Tr. 489.) He opined that because the airbag control module in Williams's car did not record an event, there is no evidence that Szafranski struck her car and pushed it into the intersection where her car was struck by two cars traveling in cross traffic. (Tr. 488, 504.) Lipian further stated that although Szafranski was traveling behind Williams's car, there was no front-end damage to Szafranski's car that would indicate a collision between his car and Williams's car.

{¶ 13} Szafranski testified that he overshot the intersection on Alger Road in Lakewood and reversed his car to clear the intersection. (Tr. 528.) As he was backing up, Williams "blared" her horn and gave him the "middle finger." (Tr. 529.) Thereafter, Williams crossed over the double-yellow line, cut in front of him, and started to "brake-check" him by slamming on her brakes with nothing in front of her. (Tr. 530.) According to Szafranski, both he and Williams kept their windows closed throughout the entire event. He insisted: "[T]here was never a point my window or her window was down." (Tr. 564.) He further stated that Williams was in the lane next to him just before the crash. He stated:

> I stopped because I didn't have the right of way. She did not. She cleared the intersection going quickly and I saw what happened. * * * In retrospect I should have stopped to make sure everybody was okay, but I wasn't involved in the accident and I didn't realize it was a duty of mine to stop.

(Tr. 539-540.) Szafranski further observed: "She was paying attention to me, not the road." He also denied making any racial slurs when he was taken into custody and denied he ever exited his car to threaten Williams. (Tr. 548-551.)

{¶ 14} After hearing the evidence, the jury found Szafranski not guilty of any of the three counts of felonious assault, but found him guilty of one count of aggravated menacing and two counts of criminal damaging. All three convictions were first-degree misdemeanors. The court sentenced Szafranski to a $2,000 fine, 200 hours of community-work service, anger-management programs, and five years of community control sanctions. He now appeals and raises eight assignments of error, which we discuss out of order for the sake of economy.

## II. Law and Analysis

### A. Voir Dire

{¶ 15} In the first assignment of error, Szafranski argues the trial court erred when it refused to allow defense counsel to conduct an effective voir dire. He contends the trial court violated his right to an impartial jury by prohibiting him from asking any questions regarding the substantive and legal issues in this case.

{¶ 16} The failure to afford an accused a fair trial violates the minimum standards of due process. *Morgan v. Illinois*, 504 U.S. 719, 727, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). Due process demands that "if a jury is to be provided to a

defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Id.*, citing *Turner v. Louisiana*, 379 U.S. 466, 472, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

{¶ 17} Thus, pursuant to R.C. 2945.27 and Crim.R. 24(B), defense counsel has the right to conduct reasonable voir dire of prospective jurors. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 48. "The purpose of voir dire examination of jurors is to determine the real state of their minds so that a fair and impartial jury can be chosen." *State v. Anderson*, 30 Ohio St.2d 66, 70, 282 N.E.2d 568 (1972), fn. 1, quoting *Evans v. Mason*, 82 Ariz. 40, 46, 308 P.2d 245 (1957).

{¶ 18} However, the manner in which voir dire is to be conducted lies within the sound discretion of the trial court. *Gwen v. Regional Transit Auth.*, 8th Dist. Cuyahoga No. 82920, 2004-Ohio-628, ¶ 38 ("[A] trial court has 'great latitude in deciding what questions should be asked on voir dire.'"), quoting *State v. Twyford*, 94 Ohio St.3d 340, 345, 2002-Ohio 894, 763 N.E.2d 122. The length and scope of voir dire are within the trial court's discretion and may vary depending on the circumstances of the case. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-395, 45 N.E.3d 127, ¶ 119; *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 92.

{¶ 19} Furthermore, "when a trial court exercises its discretion in limiting questions during voir dire, and the party challenging that ruling does not

demonstrate that a biased jury was obtained, we cannot say that the trial court abused its discretion." *Vilagi v. Allstate Indemn. Co.*, 9th Dist. Lorain No. 03CA008407, 2004-Ohio-4728, ¶ 12, citing *Krupp v. Poor*, 24 Ohio St.2d 123, 265 N.E.2d 268(1970), at paragraph four of the syllabus.

{¶ 20} Szafranski argues the trial court unreasonably limited voir dire because his defense counsel was not allowed to ask prospective jurors whether they had ever experienced a road-rage incident. In making this prohibition, the trial court told defense counsel that "[t]he case may not be argued in any way while questioning the jurors." (Tr. 10.) The court also stated that "[c]ounsel may not be engaged in efforts to indoctrinate the jurors." (Tr. 10.)

{¶ 21} However, by prohibiting defense counsel from discovering whether any of the jurors were tainted by a personal road-rage experience, the essence of the trial was never discussed. Counsel could have asked the jurors whether anyone had had an experience with road rage without asking more specific questions about the experience that could implant ideas as to how the evidence in this case should be viewed. Questioning about prior road-rage experiences might have uncovered a specific bias against someone accused of road rage.

{¶ 22} Nevertheless, there is no evidence that the jury was biased or partial. Defense counsel was permitted to ask whether any of the jurors had been the victim of a crime and whether the experience of being a victim might cause them to be biased against the defendant. (Tr. 58-64.) Defense counsel was also allowed to inquire as to whether any of the prospective jurors had any legal training that might

cause them to be biased against the defendant.  Indeed, defense counsel was given the opportunity to individually question each juror about his or her background and family life.

{¶ 23} Moreover, the jury acquitted Szafranski of three counts of felonious assault and only found him guilty of two misdemeanors.  And, as explained in our discussion of the second and third assignments of error, the evidence of Szafranski's guilt was so overwhelming that even if the trial court erred in limiting defense counsel's voir dire examination of prospective jurors, the error was harmless.  Crim.R. 52(A) defines the harmless error doctrine in criminal cases and provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."  Since there is no evidence that the jury was biased or partial and the outcome of the proceeding would not have been different even if defense counsel had been allowed to questions jurors about any personal road-rage experiences, the court's refusal to allow such questions was harmless.

{¶ 24} The first assignment of error is overruled.

### B.  Sufficiency and Manifest Weight of the Evidence

{¶ 25} In the second and third assignments of error, Szafranski argues his aggravated menacing and criminal damaging convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.  In the seventh assignment of error, Szafranski contends the trial court erred in denying his Crim.R. 29 motion for acquittal.  We discuss these assigned errors together because they are interrelated.

{¶ 26} A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence. *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 13. We, therefore, review a trial court's denial of a defendant's motion for acquittal using the same standard we apply when reviewing a sufficiency-of-the-evidence challenge. *Id.*

{¶ 27} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 28} In contrast to sufficiency, a manifest weight of the evidence attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In a manifest challenge, the reviewing court must examine the entire record, weigh the evidence and all the reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 29} In conducting such a review, the Ohio Supreme Court has stated that the appellate court "sits as a 'thirteenth juror' and disagrees with the factfinder's

resolution of conflicting testimony." *Id.* at 546-547, quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The Supreme Court's characterization of the appellate court as a "thirteenth juror" refers to the appellate court's "'discretionary power to grant a new trial.'" *Id.* at 547, quoting *Martin* at 175. As a "thirteenth juror," the appellate court may disagree with the factfinder's resolution of the conflicting evidence and, in effect, create a deadlocked jury, which requires a new trial.

{¶ 30} However, our status as a "thirteenth juror" is not equal to the other twelve jurors, who are uniquely positioned to view the witnesses' demeanor, gestures, facial expressions, and voice inflections. These outward behaviors are not evident in a written transcript. Demeanor is not what the witness says, but the manner in which he or she says it. Demeanor evidence is invaluable in assessing a witness's credibility, yet it is totally lost in transmission to the court of appeals. It is for this reason that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 4 (Aug. 22, 1997). Although we have the discretionary power of a "thirteenth juror" to grant a new trial, that

power "'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 547, quoting *Martin* at 175. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. Robinson*, 8th Dist. Cuyahoga No. 96463, 2011-Ohio-6077.

### 1. Aggravated Menacing

{¶ 31} Szafranski was convicted of one count of aggravated menacing in violation of R.C. 2903.21, which states, in relevant part, that "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, * * * ." He contends his aggravated menacing conviction is against the manifest weight of the evidence because Williams initiated the road-rage incident by blowing her horn and mouthing words at Szafranski and "she did not immediately call police nor take a photo of this alleged conduct." (Appellant's brief at 6.) He further asserts there was no credible evidence that Williams was afraid Szafranski would cause her serious physical harm because she failed to follow the dispatcher's instruction to turn off the road onto a side street.

{¶ 32} However, Williams testified that Szafranski approached her car in a confrontational manner and said: "Square up. Get out the car, you fucking bitch. Do you want to square up?" (Tr. 298, 301.) Thereafter, he returned to his car and reversed it towards Williams's car. Despite Szafranski's argument to the contrary, Williams immediately took a photograph of Szafranski's car in reverse. The

photograph was admitted into evidence and shows that Szafranski's reverse lights were illuminated. Williams testified that she called the police as soon as she swerved around Szafranski's car at the four-way stop where the incident began.

{¶ 33} Thereafter, Szafranski chased Williams's car south on Warren Road in Lakewood to Lorain Road in Cleveland. Williams reported a play-by-play of Szafranski's actions to the 911 dispatcher during the chase. On the recording of the 911 call, the jury could hear the frightened tone of Williams's voice. And Williams repeatedly told the dispatcher that Szafranski was "crazy" because he was "cutting [her] off." She repeatedly told the dispatcher: "He's gonna hit me" and "He's gonna kill me." Indeed, the dispatcher is heard on the recording of the 911 call telling Williams: "I heard him screaming at you."

{¶ 34} When the dispatcher instructed Williams to turn off the road onto a side street, she told the dispatcher she did not want to turn for fear that she might end up alone with Szafranski. When asked at trial why Williams did not turn down a side street, she stated: "Because I was scared — if I went onto a side street there was nobody but me and him — he was really going to hurt me." (Tr. 346.) When asked why she did not pull over to an area where there were other people, she explained:

> Because I thought that he was going to hurt me. He tried doing things while we were in this intersection where there was a lot of people so I figured if I was to just completely stop he was going to really hurt me.

(Tr. 347.) Williams testified that throughout the chase, Szafranski continually yelled at her, asking her to "square up" and "pull over." (Tr. 347.)

{¶ 35} Szafranski testified that Williams initiated the incident by honking and mouthing words at him. He claimed he reversed his car because he overshot the intersection on Alger Road. (Tr. 529.) He testified that he had to reverse his car to clear the intersection because he was "far enough into the intersection" that he was "blocking cross traffic." (Tr. 557.) However, Szafranski was not stopped at a traffic light. And since he was blocking the cross traffic, the cross traffic must have stopped. Therefore, it would have made more sense for Szafranski to proceed through the intersection in order to clear it rather than to reverse back to a stop sign. Szafranski's version of the events are simply not credible.

{¶ 36} By contrast, Williams's testimony is consistent with the play-by-play account of the events that she relayed to the 911 dispatcher in real time. Not only did Williams tell the dispatcher she was in fear for her life, the fear in her voice is plainly heard on the recording of the 911 call. Therefore, the manifest weight of the evidence shows that Szafranski knowingly caused Williams to believe that he would cause her serious physical harm.

### 2. Criminal Damaging or Endangering

{¶ 37} Szafranski was also convicted of one count of criminal damaging in violation of R.C. 2909.06(A)(1), which states, in relevant part, that no person shall knowingly "cause, or create a substantial risk of physical harm to any property of another without the other person's consent * * * ." Substantial risk is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a

certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶ 38} As previously stated, the manifest weight of the evidence shows that Szafranski caused Williams to believe that he was going to cause her serious physical harm. Szafranski chased Williams from the intersection of Alger Road and Delaware Avenue in Lakewood to the intersection of Lorain Avenue and West 140th Street in Cleveland. Williams called 911 shortly after passing Delaware Avenue and over four minutes elapsed between the time she called 911 and her car crashed at 140th Street. Williams reported to the dispatcher that Szafranski was chasing her and repeatedly "cutting her off." (Tr. 313.) Williams is heard on the 911 recording repeatedly yelling "Go!" because Szafranski's car kept coming close to hers. (Tr. 313.)

{¶ 39} Although there was no evidence to confirm Williams's belief that Szafranski struck her car and pushed it into the intersection where the three-car collision occurred, the evidence unequivocally showed that Szafranski's actions distracted Williams such that he not only created a substantial risk that an accident would occur, he created the circumstances that actually caused the accident. Both Williams and Clement testified that their cars were totaled. Photographs of their vehicles, which were admitted into evidence, show extensive damage to both cars. Therefore, Szafranski's two criminal damaging convictions are supported by sufficient evidence and are not against the manifest weight of the evidence.

{¶ 40} The second, third, and seventh assignments of error are overruled.

## C.  Motions in Limine

{¶ 41}  In the fifth assignment of error, Szafranski argues his right to due process was violated as a result of prosecutorial misconduct.  He contends the prosecutor committed misconduct that prejudiced his right to a fair trial by breaching a pretrial agreement he made to exclude from the evidence (1) an audio recorded statement of an anonymous 911 caller, (2) the statement of unidentified witness from the crime scene, and (3) racial slurs Szafranski allegedly made to police at the time of his arrest.

{¶ 42}  However, no agreement regarding the motions in limine was ever stated on the record.  Indeed, the parties discussed the motions on the record with the court and the court indicated that it was reserving ruling on each evidentiary item until it heard contextual evidence.  (Tr. 9.)

{¶ 43}  A motion in limine functions

> As a precautionary instruction * * * to avoid error, prejudice, and possibly a mistrial by prohibiting opposing counsel from raising or making reference to an evidentiary issue until the trial court is better able to rule upon is admissibility outside the presence of a jury once the trial has commenced.

*State v. Grubb*, 28 Ohio St.3d 199, 201-202, 503 N.E.2d 142 (1986).  In *Grubb*, the Ohio Supreme Court explained:

> A motion in limine, if granted, is a tentative, interlocutory, precautionary ruling the trial court reflecting its anticipatory treatment of the evidentiary issue.  In virtually all circumstances[,] finality does not attach when the motion is granted.  Therefore, should circumstances subsequently develop at trial, the trial court is certainly at liberty "* * * to consider the admissibility of the disputed evidence in

its actual context." State v. White, 6 Ohio App.3d 1, [451 N.E.2d 533 (8th Dist. 1982),] at 4.

*Id.* Moreover, it is the judge, not the prosecutor, who has the discretion to decide whether or not evidence is admissible at trial. *State v. Bey*, 8th Dist. Cuyahoga No. 106745, 2019-Ohio-1884, ¶ 47, quoting *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus ("The admission or exclusion of relevant evidence rests within the sound discretion of the trial court."). Thus, if the trial court admits evidence that was subject to a pretrial motion in limine, the evidence was admitted pursuant to judicial discretion and was not the product of prosecutorial misconduct. We, therefore, review the evidence to determine if the admission of the evidence was an abuse of discretion.

### 1. Statements of the Anonymous 911 Caller and The Anonymous On-Scene Witness

{¶ 44} In his motion in limine, Szafranski argued that the out-of-court statements of an unidentified 911 caller and an unidentified male at the scene of the accident were not admissible at trial because they violated the Confrontation Clause of the Sixth Amendment to the United States Constitution because they were not available for trial and, therefore, would not be subject to cross-examination.

{¶ 45} The Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Evid.R. 801(C). Thus, whenever the state seeks to introduce hearsay into evidence in a criminal proceeding, the court must determine

not only whether the evidence fits within an exception to the hearsay rule, but also whether the introduction of such evidence offends an accused's right to confront witnesses against him. *State v. Kilbane*, 8th Dist. Cuyahoga No. 99485, 2014-Ohio-1228, ¶ 29.

{¶ 46} In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial." *Id.* at 59. The court explained that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." This means that the state may not introduce "testimonial" hearsay against a criminal defendant, regardless of whether such statements are deemed reliable, unless the defendant has an opportunity to cross-examine the declarant. *Id.* at 53-54, 68.

{¶ 47} However, the *Crawford* court held that the Confrontation Clause only requires exclusion of "testimonial" as opposed to "non-testimonial" evidence. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). If a statement is not testimonial, the principles embodied in the Confrontation Clause do not apply. *Whorton v. Bockting*, 549 U.S. 406, 420, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007).

{¶ 48} Although the *Crawford* court did not specifically define the term "testimonial," it explained that hearsay statements are implicated by the Confrontation Clause when they are "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford* at 52.

{¶ 49} Two years after *Crawford*, the high court clarified that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis* at 822. By contrast, statements are testimonial when the circumstances indicate that there "is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id. See also State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, paragraph one of the syllabus.

{¶ 50} The anonymous 911 caller reported to police that there was a road-rage incident occurring. The caller reported that the red Camry, which was driven by Szafranski, appeared to be the aggressor. The caller notified the dispatcher of the incident's location in order to call police to the scene. The caller obviously reported the incident because it posed a threat of harm to innocent bystanders on the road. In other words, the caller's statements were made for the primary purpose of aiding police in addressing an ongoing emergency. Indeed, the caller was describing the events "as they were happening." *Davis* at 827. Therefore, the caller's statements

were not testimonial hearsay and, therefore, were not barred by the Confrontation Clause.

{¶ 51} By the time Officer Haburjak spoke with the unidentified male witness at the scene of the accident, the emergency was over; the accident had already occurred, and Szafranski had already left the scene. Therefore, his statements were not made for the purpose of assisting police in an ongoing emergency. However, even if his statements were admitted in error, his statements were harmless. Error in the admission of evidence is harmless if there is no reasonable possibility that the evidence contributed to the accused's conviction. *State v. Weakley*, 8th Dist. Cuyahoga No. 105293, 2017-Ohio-8404, ¶ 58. The harmless-error doctrine recognizes that errors that do not affect the outcome of a criminal prosecution are disregarded on appeal:

> The harmless-error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual questions of the defendant's guilt or innocence, * * * and [to] promote[] public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

*State v. Williams*, 38 Ohio St.3d 346, 349, 528 N.E.2d 910 (1988), *cert. denied*, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).

{¶ 52} The unidentified male witness told Haburjak that he witnessed the crash and informed him that the red Camry had left the scene heading southbound on West 140th Street. His statements about the accident were cumulative to the more compelling statements made by the anonymous 911 caller and by the victim

herself on her own 911 call. Furthermore, the direction of Szafranski's travel was immaterial since the police discovered his location by running his license plates and locating his residence. Therefore, even if the statements of the unidentified male witnesses were admitted in error, the error was harmless.

## 2. Racial Slur

{¶ 53} Szafranski contends that either the prosecutor committed misconduct or the trial court erroneously allowed the prosecutor to admit evidence that he used a racial slur to describe the victim at the time of his arrest.

{¶ 54} Although defense counsel moved, in limine, to exclude this racial comment from the evidence, the court reserved ruling on the motion until it had heard the evidence. Then, during the direct examination of Haburjak, the prosecutor asked whether Szafranski made any statements at the time of his arrest. Without objection, Haburjak testified that as he was placing Szafranski in the back of the police car, he yelled to his father: "I can't believe I'm getting a felony because of that n----r bitch." (Tr. 362.) Officer Rutt similarly testified without objection that he heard Szafranski say: "I have five felonies because of this n----r bitch." (Tr. 449.)

{¶ 55} Because Szafranski did not object to these statements at trial, he forfeited all but plain error. *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 90 (8th Dist.). Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In a plain-error analysis, the appellant bears the burden on demonstrating that, but for

the error, the outcome of the trial would clearly have been different. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.

{¶ 56} Szafranski argues the prosecutor offered evidence of his racial slur for the sole purpose of inflaming the jury. However, the statement is an admission by the defendant that placed him at the scene of the crime and is, therefore, relevant and probative of guilt. Moreover, even if the racist statements were offered in error, they would not have changed the outcome of the trial where the overwhelming evidence demonstrated that Szafranski threatened and intimidated the victim and that his actions caused the car accident that damaged the victims' cars.

{¶ 57} Therefore, the fifth assignment of error is overruled.

## D. Limiting Instructions

{¶ 58} In the sixth assignment of error, Szafranski argues the trial court erred in refusing his requests for certain jury instructions.

{¶ 59} "In a criminal case, if requested special instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge." *Cincinnati v. Epperson*, 20 Ohio St.2d 59, 253 N.E.2d 785 (1969), paragraph one of the syllabus, *overruled in part on other grounds*, *State v. Carter*, 72 Ohio St.3d 545, 651 N.E.2d 965 (1995). However, the trial court is not required to give a verbatim recitation of a requested jury instruction. *State v. Harris*, 8th Dist. Cuyahoga No. 104329, 2017-Ohio-2751, ¶ 65. The trial court may use its own language to communicate the same legal principles. *Id.*, citing *State v. Sneed*, 63 Ohio St.3d 3, 584 N.E.2d 1160 (1992). Furthermore, the trial court has

discretion to decide whether to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an abuse of discretion. *State v. Price*, 8th Dist. Cuyahoga No. 107096, 2019-Ohio-1642, ¶ 38.

{¶ 60} Szafranski requested a special instruction regarding the credibility of the victim. The trial court denied the request but included a substantially similar instruction regarding the credibility of witnesses generally. Because the general instruction applied equally to all witnesses, including the victim, there was no reason to provide an additional instruction to be applied solely to the victim's testimony. The requested instruction was included in the substance of the general instruction on the credibility of witnesses. Therefore, the trial court did not abuse its discretion in refusing to give Szafranski's requested instruction regarding the victim's credibility.

{¶ 61} Szafranski also contends the trial court erred in failing to give a limiting instruction to advise the jury that evidence that Szafranski made a racial slur could only be used for the limited purpose of determining whether the state proved that he committed the alleged crimes beyond a reasonable doubt and that the evidence could not be considered in evaluating his character, nor for any other purpose. However, Szafranski denied that he ever made the racist comment when he testified in his own defense and claimed that "that is not how [he] was raised." (Tr. 548.) Whether or not Szafranski made the racist comment became an issue of credibility and could, therefore, be used to assess Szafranski's credibility. Therefore, the trial court acted within its discretion in denying the special limiting instruction.

{¶ 62} The sixth assignment of error is overruled.

## E. Cumulative Error

{¶ 63} In the fourth assignment of error, Szafranski argues the trial court committed cumulative errors that deprived him of his rights to due process of law and a fair trial.

{¶ 64} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal. *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). "However, the doctrine of cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent." *State v. Allen*, 8th Dist. Cuyahoga No. 102395, 2016-Ohio-102, ¶ 53, citing *State v. Brown*, 100 Ohio St.3d 52, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 48.

{¶ 65} Szafranski contends the trial court erred by (1) allowing the state to recall a witness in its case-in-chief, (2) allowing the state to introduce evidence of a racial slur, (3) refusing to admit his expert's report into evidence, (4) allowing the state to play a recording of the 911 call made by an anonymous witness, and (5) allowing the state to introduce statements of an unidentified male witness at the scene. However, as previously stated, the trial court did not err in allowing the state to introduce evidence of the racial slur and the statements of the anonymous 911 caller. Therefore, there is no basis for a claim of cumulative error based on these decisions. We will, therefore, limit our discussion to Szafranski's claims that the

court erred in allowing the state to recall a witness in its case-in-chief, allowing the state to introduce statements of an unidentified male witness from scene, and refusing to admit his expert's report into evidence.

### 1. Recalling a Witness

{¶ 66} Szafranski argues he was denied due process and a fair trial because the court allowed the state to recall Officer Haburjak after his testimony had concluded during the state's case-in-chief.

{¶ 67} Evid.R. 611(A) provides that the trial court shall exercise control over the mode and order of interrogating witnesses and the presentation of evidence to ensure that the interrogation and presentation of evidence are effective in ascertaining the truth. Whether to permit a witness to be recalled to give additional testimony is a matter committed to the sound discretion of the trial court. *State v. Sims*, 3 Ohio App.3d 321, 329, 445 N.E.2d 235 (8th Dist.1981).

{¶ 68} An abuse of discretion implies a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13. When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider,* 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

{¶ 69} After Haburjak concluded his testimony and was released from the witness stand, the state requested permission to recall him as a witness in order to introduce evidence of the racial slur made by Szafranski, statements of the anonymous 911 caller, and statements of an unidentified male witness at the scene

of the car accident. Szafranski objected on the basis of unfair surprise, and violation of the parties' pretrial agreement on motions in limine. He also argued that because the witness's testimony had concluded, the state could only call him for purposes of rebuttal. The state asserted the evidence was necessary to rebut misleading assertions made by the defense in opening statements.

{¶ 70} Defense counsel told the jury in opening statements that the state's entire case rested on the credibility of the victim, who fabricated the story to avoid responsibility for causing the three-car accident. Defense counsel also suggested that there was no other evidence to corroborate her story. Defense counsel made these statements after obtaining an agreement from the state that it would seek to introduce evidence of the statements of the two anonymous witnesses, who corroborated the victim's version of the events.

{¶ 71} Following the first day of trial, the state conducted research to support its argument that evidence of the unidentified witnesses was admissible to rebut defense counsel's attack on the victim's credibility in opening statements. (Tr. 389-390.) After considering the parties' arguments and the relevant case law, the trial court concluded that the statements of the unidentified witnesses did not violate the Confrontation Clause because they were made to assist the police in an ongoing emergency.[1] (Tr. 427.) Moreover, the evidence was necessary to rebut the false impression created by defense counsel that the victim fabricated the story and

---

[1] Although we concluded that the trial court erred in admitting statements of the unidentified male witness at the crash scene, that error was harmless because the witness's statement was cumulative to other evidence.

there was no corroborating evidence. Therefore, there was no abuse of discretion in allowing the state to recall Haburjak to provide rebuttal evidence since this evidence was necessary for the jury to ascertain the truth.

{¶ 72} Szafranski also argues the trial court erred in allowing the state to recall Haburjak in order to authenticate a dash-camera video depicting Szafranski making the racial slur. However, Haburjak testified that Szafranski made the racial slur during direct examination the first time Haburjak testified. (Tr. 362.) During cross-examination, defense counsel played a portion of the dash-camera video but, either purposefully or accidentally, omitted the footage of Szafranski making the racial slur in an apparent attempt to discredit Haburjak by suggesting that the recording did not exist. Haburjak repeatedly told defense counsel that he was not playing the video long enough to reach the incriminating footage. Thus, again, the trial court allowed the state to introduce the omitted portion of the dash-camera video in order to present the relevant footage for the jury's ascertainment of the truth. We cannot say the admission of this evidence was an abuse of discretion under these circumstances.

### 2. Defendant's Expert Report

{¶ 73} Finally, Szafranski argues the trial court's refusal to admit his defense expert's report into evidence deprived him of due process and a fair trial. However, his defense expert rendered his opinions in open court and on the record for the jury. Furthermore, his expert's opinion was primarily offered to show that Szafranski did not cause the accident by intentionally rear ending Williams's car and

pushing her into the intersection where the three-car collision occurred. His expert testified that there was no evidence that her airbag module recorded any data to support a finding that she was rear-ended, and there was no evidence on either Williams's or Szafranski's vehicles to prove that they ever came into contact with each other. It is likely for this reason that the jury found Szafranski not guilty of the three counts of felonious assault; there was no evidence that he intentionally pushed Williams and her two-year old passengers into the intersection where the crash occurred. Therefore, there is nothing to suggest that Szafranski was deprived of due process or a fair trial even though his defense expert's report was excluded from the evidence.

{¶ 74} The fourth assignment of error is overruled.

### F. Indefinite Period of Electronic Monitoring

{¶ 75} In the eighth assignment of error, Szafranski argues (1) the trial court erred in sentencing him to an indefinite period of electronic home detention and GPS monitoring, (2) the trial court failed to state the length of time he would be subject to community control sanctions, and (3) the trial court failed to properly consider the statutory sentencing criteria applicable to misdemeanor convictions.

{¶ 76} The trial court stated at the sentencing hearing that Szafranski would be subject to community-control sanctions and GPS monitoring, but the court never stated the length of time he would be subject to either community control or GPS monitoring in open court and on the record. The journal entry states that Szafranski was sentenced to five years of community-control sanctions and GPS monitoring

"until further order of the court."  However, because the court failed to notify Szafranski of these facts on the record at the sentencing hearing, the sentence set forth in the journal entry was imposed outside the defendant's presence in violation of Crim.R. 43(A)(1), the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 16 of the Ohio Constitution.  The sentence is, therefore, contrary to law.

{¶ 77}  The eighth assignment of error is sustained.

{¶ 78}  Judgment affirmed in part, vacated in part; Szafranski's convictions are affirmed, but the sentence is vacated.  Case remanded to the trial court for resentencing.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
MARY EILEEN KILBANE, A.J., DISSENTS WITH SEPARATE OPINION

MARY EILEEN KILBANE, A.J., DISSENTING:

{¶ 79} I respectfully dissent. The majority finds that the trial court's refusal to allow defense counsel to question prospective jurors about any motor vehicle accidents and personal road rage encounters is harmless error. I respectfully disagree.

{¶ 80} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee Szafranski the fundamental right to a fair and impartial trial by a jury of his peers. As this court stated in *State v. Whitmore*, 8th Dist. Cuyahoga No. 78035, 2001 Ohio App. LEXIS 1999 (May 3, 2001):

> "It is basic that litigants are entitled to have their rights tried and determined by a jury of impartial, unprejudiced and unbiased men and women. *Petro v. Donner* (1940), 137 Ohio St. 168, 174, 28 N.E.2d 503. Voir dire of the jurors ensures the litigant's right to a fair and impartial jury."

*Id.* at 7, quoting *McQueen v. Goldey*, 20 Ohio App.3d 41, 484 N.E.2d 712 (12th Dist. 1984).

{¶ 81} Indeed, the purpose of a voir dire examination is to determine whether the prospective juror is free from bias or prejudice against either litigant. *Vega v. Evans*, 128 Ohio St. 535, 191 N.E. 757 (1934), paragraph one of the syllabus, *following and approving, Pavilonis v. Valentine*, 120 Ohio St. 154, 165 N.E. 730 (1929), paragraph one of the syllabus; *Krupp v. Poor*, 24 Ohio St.2d 123, 125, 265 N.E.2d 268 (1970). During voir dire, the trial court should allow reasonable inquiry on any relevant matter that is determinative of the issues of the case. *State v.*

*Gaines*, 8th Dist. Cuyahoga No. 91179, 2009-Ohio-622, ¶ 71, citing *Dayton v. Meyer*, 2d Dist. Montgomery No. 11848, 1991 Ohio App. LEXIS 1541 (Mar. 29, 1991); *State v. Black*, 4th Dist. Ross No. 12CA3327, 2013-Ohio-2105, ¶ 22. In order to ensure such a result, counsel should be afforded reasonable latitude on the voir dire examination. *Krupp* at 126.

{¶ 82} In the instant case, defense counsel attempted to question potential jurors if they have ever witnessed or been a victim of a road rage incident, a motor vehicle accident, or a hit-and-run accident — encounters that are paramount to the essence of Szafranski's road-rage case. The trial court prohibited defense counsel from asking prospective jurors these questions on the basis that counsel was engaging in efforts to indoctrinate the jurors.

{¶ 83} Voir dire can sometimes be improperly used for purposes such as indoctrinating the prospective jury as to the law or attempting to commit them in advance to a position that might arise in the trial of the case. *See State v. Carmon*, 10th Dist. Franklin No. 75AP-583, 1976 Ohio App. LEXIS 6518, 4 (June 1, 1976). The matter before us, however, is not one of those instances.

{¶ 84} The majority acknowledges that by prohibiting defense counsel from discovering whether any of the jurors had a personal road rage experience, the essence of the trial was never discussed. The majority also acknowledges that questions about prior driving accidents and road rage encounters might have revealed a specific bias or prejudice against someone accused of road rage, but

concludes that any error in limiting defense counsel's voir dire was harmless because of the evidence of Szafranski's guilt was so overwhelming.

{¶ 85} While the facts of this case are not favorable to Szafranski, he is still entitled to his constitutional rights. I would find that Szafranski's fundamental and constitutional right to a fair and impartial jury by selecting a jury of his peers was violated when the trial court unreasonably limited defense counsel from asking any questions paramount to Szafranski's case. A prospective juror's experience with prior driving accidents and road rage encounters would obviously be relevant to the issues of the instant case. *State v. Black*, 4th Dist. Ross. No. 12CA3327, 2013-Ohio-2105*, ¶ 23.

{¶ 86} In *Black*, the defendant was charged with involuntary manslaughter, felonious assault, and failure to stop after a nonpublic road accident for hitting the victim with his car. During voir dire, the trial court permitted the state to ask prospective jurors about their personal history with automobile accidents. On appeal, defendant argued that this line of questioning "was an attempt to 'pre-try the case' and to 'indoctrinate the jury,' thus violating his right to trial by a fair and impartial jury." *Id.* at ¶ 17.

{¶ 87} The Fourth District Court of Appeals disagreed with the defendant, finding, under a plain-error analysis, that the trial court did not permit improper questions during voir dire. *Id.* at ¶ 23. The court reasoned, "[a] potential juror's experience with an automobile accident would obviously be relevant to the issues of the instant case. Furthermore, the questions were aimed at determining whether a

potential juror might be prejudiced or biased, either in favor of or against the state's case." *Id.*

{¶ 88} Likewise, the questions by defense counsel in the instant case were not designed to indoctrinate the jurors. Rather, they sought information critical to the essence of Szafranski's case and would have assisted in the selection of an impartial jury of Szafranski's peers. Without these questions, defense counsel was unable to ascertain which prospective jurors, if any, may have had prior road rage encounters, motor vehicle accidents, hit-and-run accidents, or bias in any of these situations that could have changed the outcome of Szafranski's trial.

{¶ 89} Therefore, I would sustain the first assignment of error.